**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PAMELA T. FREEMAN, | ) | |
| | ) | CASE NO. 1:12-cv-02284 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Pamela T. Freeman ("Freeman") challenges the final decision of the Commissioner of Social Security ("Commissioner"), denying Freeman's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), Widow's Insurance Benefits ("WIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On November 19, 2008, Freeman filed an application for POD, DIB, WIB, and SSI

alleging a disability onset date of April 15, 2007.  Her application was denied both initially and upon reconsideration.  Freeman timely requested an administrative hearing.

On April 19, 2011, an Administrative Law Judge ("ALJ") held a hearing during which Freeman, represented by counsel, and an impartial vocational expert ("VE") testified.  On May 26, 2012, the ALJ found Freeman was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  (Tr. 36-37.)  The ALJ's decision became final when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age fifty-four at the time of her administrative hearing, Freeman is a "person closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. §§ 404.1563(d) & 416.963(d).  Freeman has at least a high school education and past relevant work as an assembler of small productions and as a collections clerk.  (ECF No. 36.)

## III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity."  Second, the claimant must suffer from a "severe impairment."  A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Freeman was insured on her alleged disability onset date, April 15, 2007, and remained insured through the date of the ALJ's decision, May 26, 2011. (Tr. 30.) Therefore, in order to be entitled to POD and DIB, Freeman must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

Pursuant to 42 U.S.C. § 402(e), a widow may qualify for disability benefits if (1) she is the widow of a wage earner who died fully insured, (2) she is between the ages of fifty and sixty, (3) she is disabled, and (4) her disability is expected to result in death or to last for a continuous period of not less than twelve months. *See, e.g., Price v. Heckler*, 767 F.2d 281, 282 (6th Cir. 1985).

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

3

### IV. Summary of Commissioner's Decision

The ALJ found Freeman established medically determinable, severe impairments, due to "an affective disorder, an anxiety disorder, polysubstance dependence, chronic obstructive pulmonary disease, hypertension, and status-post left ankle fracture." (Tr. 31.) However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 32.) Freeman was found incapable of performing her past relevant work, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of medium work. (Tr.33-36.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Freeman was not disabled. (Tr. 36-37.)

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d

4

762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL

2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. Analysis

Freeman asserts that the ALJ erred by assigning great weight to the opinions of State Agency medical consultants while assigning only little weight to the opinions of two treating psychiatrists – Ronald Lee, M.D., and Kirk Carruthers, M.D. (ECF No. 15 at 7-14.)

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at \*9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[2]

---

[2] Pursuant to 20 C.F.R. §§ 404.1527(c) & 416.927(c), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

Nonetheless, the opinion of a treating physician must be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

On October 7, 2009, Dr. Carruthers[3] completed a medical source statement wherein he stated that Freeman had poor or no ability to maintain attention and concentration for extended periods of 2 hour segments, to respond appropriately to changes in routine setting, to deal with the public, to relate to co-workers, to interact with supervisors, to deal with work stresses, and to complete a normal workday and work week without interruptions from psychologically based symptoms. (Tr. 516-17.) Dr. Carruthers further stated Freeman had poor to no ability to understand, remember and carry out detailed, but not complex job instructions. (Tr. 517.)

On February 23, 2011, Dr. Lee completed a medical source statement wherein he stated that Freeman has poor ability to maintain attention and concentration for extended periods of 2 hour segments, to respond appropriately to changes in routine settings, to deal with the public, to function independently without supervision, to work in coordination with or proximity to others without being unduly distracted or distracting, to deal with work stresses, to complete a normal workday and work week without interruption from psychologically based symptoms, to

---

[3] Though the ALJ did not expressly identify Dr. Carruthers as a "treating" psychiatrist, it appears that he saw Freeman at least three times prior to completing the source statement. (Tr. 444-450.)

7

understand, remember, and carry out complex or detailed job instructions, and to socialize. (Tr. 560-61.) Dr. Lee explained that Freeman has bipolar disorder and "would have trouble at work place interacting with people, maintaining concentration, dealing with the public, job stressors, more complex tasks." (Tr. 561.)

The ALJ addressed the aforementioned opinions as follows:

> As for the opinion evidence, the undersigned places great weight on the opinion of the State's consulting medical examiners (Exhibits 8F, 10F, 17F and 18F). Those opinions are well reasoned and well supported by their citations to the record. Dr. Carruthes [sic] submitted an opinion form of the claimant's mental capacity that is consistent with a finding of disability (Exhibit 15F). In many places on that form, Dr. Carruthes [sic] quotes the claimant's own opinion of her functioning. Thus, the undersigned does not find it to be an objective analysis by that practitioner. The undersigned also notes that Dr. Curruthes' [sic] ratings of the claimant's functioning are inconsistent with her mental status examinations (Exhibits 12F and 21F). Therefore, that opinion form is granted little weight. Ronald Lee, M.D., the claimant's current treating psychiatrist also completed a form noting the clamant [sic] to have mostly fair to poor functioning in most domains (Exhibit 22F). That opinion is likewise granted little weight because it conflicts with Dr. Lee's own objective mental status examination notes and the claimant's reports of her functioning.

(Tr. 35.)

The ALJ's conclusory and unexplained statement that the opinions of Drs. Carruthers and Lee were inconsistent with objective mental status examination does not, in and of itself, constitute "good reasons" for rejecting his opinion. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (finding an ALJ failed to give "good reasons" for rejecting the limitations contained in a treating source's opinion where the ALJ merely stated, without explanation, that the evidence of record did not support the severity of said limitations); *accord Dunlap v. Comm'r of Soc. Sec.*, 2012 U.S. App. LEXIS 26483 (6th Cir. Dec. 27, 2012); *Bartolome v. Comm'r of Soc. Sec.*, 2011 WL 5920928 (W.D. Mich. Nov. 28, 2011) (noting that

merely citing to "the evidence" and referring to the appropriate regulation was insufficient to satisfy the "good reasons" requirement); *Patterson v. Astrue*, 2010 WL 2232309 (N.D. Ohio June 2, 2010) (remanding where the "ALJ did not provide any rationale beyond his conclusory statement that [the treating physician's] opinion is inconsistent with the objective medical evidence and appears to be based solely on [claimant's] subjective performance."); *Fuston v. Comm'r of Soc. Sec.*, 2012 WL 1413097 (S.D. Ohio Apr. 23, 2012) (finding the ALJ deprived the court of meaningful review where the ALJ discarded a treating physician's opinion without identifying any contradictory evidence or explaining which findings were unsupported), *report and recommendation adopted,* 1:11CV224, 2012 WL 1831578 (S.D. Ohio May 18, 2012)

The Commissioner asserts that the discussion in the preceding paragraph, cited below, adequately explains which mental status findings were inconsistent with the limitations assessed by Dr. Carruthers and Dr. Lee and any repetition would have been superfluous. (ECF No. 16 at 14-15.)

> [V]ery minimal objective deficits have been noted on formal mental status examinations. In March 2009, Dr. Kampampati noted a mild concentration impairment (Exhibit 11F, p. 17). And in July 2009, Dr. Carruthes [sic] noted a decrease in the claimant's memory (Exhibit 12F, p. 6). Otherwise, no other objective concentration or memory difficulties have been observed to support the claimant's allegations. Likewise, the claimant's own reports of her functioning during treatment sessions are inconsistent with her allegations. While she has occasionally reported difficulty with a depressed mood and irritability, she has generally endorsed improved mood, decreased irritability, improved concentration,[4] improved impulse control, and feeling calmer and more at peace (Exhibit 11F, pp. 14-21; Exhibit 12F, pp. 2-5, Exhibit 21F).

---

[4] While Dr. Kampampati noted "improved concentration" in March of 2009 (Tr. 453), the portions of the record cited by the ALJ in support of Freeman generally reporting improved concentration to Dr. Carruthers actually suggest the opposite. According to Dr. Carruthers' notes, on August 12, 2009, Freeman reported "↓concentration" and "continual ↓concentration" on October of 2009. (Tr. 444, 446, Exh. 12 at 2, 4.)

9

(Tr. 35.)

First, the ALJ did not suggest that he was rejecting the opinions of Freeman's treating psychiatrists due to any conflict with the opinion of Dr. Kampampati. Second, the ALJ's statement that Freeman reported improved concentration to Dr. Carruthers is inaccurate. His treatment notes state the opposite. (Tr. 444, 446.) Third, Freeman's mental limitations, as assessed by Dr. Lee and Dr. Carruthers, go beyond issues involving memory and concentration. It is unclear, for example, how any of the information in the above paragraph undermines the treating psychiatrists' opinions with respect to Freeman's troubles interacting with the public, with supervisors, or her alleged inability to complete a normal work week. Even reading the opinion as a whole, it remains unclear how either psychiatrist's assessment is inconsistent with Freeman's mental status examinations, as the ALJ offers no meaningful explanation except for a general reference to Exhibits 12F and 22F.

It is also unclear how Freeman's reports of her functioning conflict with Dr. Lee's opinion as, again, the ALJ offers nothing in the way of an explanation. The ALJ does, at various points in the decision, indicate that Freeman grocery shops, consistently attends medical appointments, attends church, and maintains relationships with family members. (Tr. 32, 35.) The ALJ, however, neglected to explain how such minimal and infrequent activities, performed for a limited amount of time despite her allegations of mental distress, were so inherently inconsistent with the mental limitations found by her psychiatrists. *See, e.g., Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is

10

intermittent and not continuous, and is done in spite of the pain suffered by [claimant]."); *accord Pirrone v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 39128 (N.D. Ohio Mar. 4, 2013), *Davisson v. Astrue*, 2011 U.S. Dist. LEXIS 64263 at *29 (N.D. Ohio, June 17, 2011). "[A court] cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

      With respect to Dr. Carruthers's opinion, the ALJ noted that it, at times, quotes Freeman's self reporting of her functioning level and is, therefore, not objective. (Tr. 35.) The Court is skeptical whether it is reasonable to infer that Dr. Carruthers's opinion was essentially an accommodation for Freeman based on the inclusion of what appear to be some of Freeman's own statements. Arguably, the ALJ's finding herein is similar to one that was criticized in *Nixon v. Astrue*, 2011 U.S. Dist. LEXIS 107610, 2011 WL 4443106 (E.D. Okla. Sept. 22, 2011). Therein, the court was confronted with a case where the ALJ gave no weight to a treating physician's opinion and did not specifically identify any evidence in the record contradicting it. *Nixon*, 2011 U.S. Dist. LEXIS 107610 at *4. The *Nixon* court found "[the ALJ's] statements that Dr. Patton's report was prepared as an act of courtesy smack of the old 'treating physician's report appears to have been prepared as an accommodation to a patient' statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's opinion." *Id*. (citing *Miller v. Chater*, 99 F.3d. 972, 976 (10th Cir.1996); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)); *see also Papaleo v. Astrue*, 2011 U.S. Dist. LEXIS 113242, 2011 WL 4633744 (N.D. Ohio Sept. 30, 2011) (citations omitted) (ALJ's finding of bias

11

due to a treating physician and a claimant working at the same hospital was an insufficient basis to reject the opinion as unreliable). However, assuming for the sake of argument that this additional reason given for rejecting the opinion of Dr. Carruthers is sufficient, it does not cure the lack of an adequate explanation for the weight afforded Dr. Lee's opinion.

Finally, the Commissioner also asserts that the ALJ reasonably ascribed great weight to the opinions of the State Agency reviewing physicians.[5] (ECF No. 16 at 15.) To the extent that the ALJ based his rejection of the treating psychiatrists' opinions upon their inconsistency with the opinions of non-examining State Agency consultants, such finding turns the treating physician rule on its head. It is well established that the opinions of non-examining physicians carry little weight when they are contrary to the opinion of a treating physician. *See, e.g., Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (finding that the opinion of a non-examining physician "cannot provide a sufficient basis for rejecting the opinions of plaintiff's treating physicians") (citing *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (*per curiam*); *Fife v. Heckler*, 767 F.2d 1427, 1431 (9th Cir. 1985) ("If the ALJ wishes to disregard the opinion of the treating physician, he must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record, even where the treating physician's opinion is controverted by the Secretary's consultant.")

Therefore, the Court finds that Freeman's first assignment of error has merit. The ALJ failed to set forth good reasons for rejecting the opinions of Dr. Lee and Dr. Carruthers. The Court is unable to trace the path of the ALJ's reasoning and the analysis was insufficient under

---

[5] Notably, the ALJ opinion, while ascribing great weight to these physician's opinions, does not actually discuss the content of these opinions, nor explain why he considers them "well reasoned" and "well supported." (Tr. 35.)

the Administration's procedural rules.[6]

Freeman asks this Court to reverse the ALJ's decision and award disability benefits. (ECF No. 15 at 21.) Freeman can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and proof of disability is compelling). When the ALJ misapplies the regulations or when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be vacated, the appropriate remedy is not to award benefits. While the ALJ did not give good reasons for discounting the opinions of Dr. Carruthers and Dr. Lee, it does not necessarily follow that the ALJ was obligated to accept them. The Court, therefore, concludes that remand is required under "sentence four" of 42 U.S.C. § 405(g).[7]

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings

---

[6] Because the Court finds remand is necessary, the Court declines to address Freeman's remaining assignments of error.

[7] Under sentence four of 42 U.S.C. § 405(g), the district court has the authority to reverse, modify, or affirm the decision of the Commissioner. This may include a remand of the case back to the Commissioner for further analysis and a new decision. A sentence four remand is a final judgment. *See Melkonyan v. Sullivan*, 501 U.S. 89, 97-102, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

consistent with this opinion.

    IT IS SO ORDERED.

                                            <u>/s/ Greg White</u>
                                            U.S. Magistrate Judge

Date: July 10, 2013